## CITIZENS AND SOUTHERN BANK *et al. v.* STATE OF GEORGIA *et al.*

1. The petition is not demurrable upon the ground of misjoinder of parties.
2. The petition is not duplicitous or inconsistent.
3. Taxes are not a " debt" within the usual meaning of that word, and can not be collected *in a suit at law*, in the absence of express statutory authority. Properly construed, the petition is not one having for its purpose the collection of taxes by a suit at law.
4. Where funds in the nature of trust funds are misapplied by persons acting in the character of trustees, they, and all persons aiding and assisting in the misapplication of such assets with knowledge of such misapplication, are accountable to the person injured for such misappropriation, and an equitable petition will lie in behalf of such injured person to recover such misapplied trust funds.
5. The court did not err in overruling the demurrer to the petition.

No. 2305.   JULY 13, 1921.

Equitable petition. Before Judge Meldrim. Chatham superior court. September 27, 1921.

The petition of the State of Georgia and the County of Chatham alleged in substance as follows: On or about December 30, 1918, the directors of the Merchants National Bank of Savannah entered into a tentative agreement with the Citizens & Southern Bank, a corporation of this State, for the liquidation of the affairs of the first-named bank. A meeting of stockholders of the Merchants National Bank was held on January 14, 1919, at which were present and represented, either in person or by proxy, shareholders owning two thirds of the capital stock. Joseph Hull and others were elected as directors, and the directors elected V. B. Jenkins as cashier. A resolution was adopted, authorizing and directing the liquidation of the affairs of the Merchants National Bank through the Citizens & Southern Bank; and V. B. Jenkins was elected liquidating agent. By virtue of this resolution all the assets of the bank became a trust fund in the hands of the directors of that bank, primarily for the purpose of the payment of its debts and then for the purpose of distribution among its stockholders. The tentative agreement of December 30, 1918, for liquidation of the Merchants National Bank was ratified by its stockholders and by its directors on January 14, 1919. Plaintiffs are advised and believe that under the terms of the agreement the price to be paid to the stockholders by the Citizens & Southern Bank for their shares of stock was $140 per share. In pursuance of this agreement the Citizens & Southern Bank paid to the directors of the Merchants National Bank the sum of $700,000, or other large sum, which sum became

a fund primarily for the purpose of paying the debts of the Merchants National Bank, and the amount remaining after the payment of its debts was to be distributed among its shareholders. The assets of the Merchants National Bank had not been distributed on January 1, 1919, and were intact. On that date the State and county taxes due on the stock of the Merchants National Bank for the year 1919 became due and payable. On April 16, 1919, V. B. Jenkins as cashier of the Merchants National Bank made returns for its State and county taxes for the year 1919, of five thousand shares of stock of the stated value of $434,000. The fund arising from the sale of the assets of the Merchants National Bank, so paid by the Citizens & Southern Bank, became a trust fund, first for the purpose of paying the debts of the bank, next for the purpose of distribution among its stockholders; and the Citizens & Southern Bank became a trustee of such fund for that purpose. The funds arising from the sale of the assets of the Merchants National Bank also became a trust fund in the hands of V. B. Jenkins, liquidating agent, primarily for the purpose of paying the debts of the bank, and afterwards for distribution among its stockholders. All the assets of the Merchants National Bank have been distributed by the Citizens & Southern Bank, the directors of the Merchants National Bank, and V. B. Jenkins as liquidating agent, to the stockholders of the Merchants National Bank, leaving unpaid the taxes due the State of Georgia and the County of Chatham. The Citizens & Southern Bank and the directors and the liquidating agent, not regarding their duty in the premises as trustees, have failed to pay such taxes. The amount due the State and county for taxes for the year 1919 by the Merchants National Bank on its shares of stock is $8,193.92, besides interest from December 20, 1919, and the cost for issuing the tax execution. The defendants have been stubbornly litigious and have caused plaintiffs unnecessary trouble and expense in the collection of the tax fi. fas., and the plaintiffs are entitled to recover of the defendants reasonable attorney's fees and expenses of litigation. The plaintiffs file this petition in behalf of themselves and such other creditors of the Merchants National Bank as may intervene; and they pray judgment against the Citizens & Southern Bank and the directors of the Merchants National Bank (naming them), and against V. B. Jenkins as liquidating agent, for the sum of $8,193.92, besides interest, cost, expenses

and attorney's fees incurred in bringing this suit. There is also a prayer that the Citizens & Southern Bank answer, not under oath, what sum of money it agreed to pay to the Merchants National Bank for its assets, and that the directors be required to answer what amount of money the Citizens & Southern Bank agreed to pay the Merchants National Bank for the sale of its assets, and on what date the first payment was made and the amount thereof; also that V. B. Jenkins, liquidating agent, be required to answer what dividends were paid to the stockholders and the dates of payment, and what payments were made to him as liquidating agent by the Citizens & Southern Bank for the assets of the Merchants National Bank, and on what date the first payment of the same was made.

The defendants demurred to the petition, because: (1) There is a misjoinder as to plaintiffs,. in that the declaration joins as plaintiffs the State of Georgia and the County of Chatham, which parties have not a joint interest and whose demands are separate. (2) There is a misjoinder of causes of action, in that the declaration attempts to join two separate demands and to enforce by one proceeding distinct and separate claims. (3) The declaration joins two distinct claims of two distinct plaintiffs as a joint claim, and asserts a liability for the aggregate. (4) The declaration is duplicitous and contradictory and is not consistent, in that it undertakes to proceed against the Citizens & Southern Bank as a trustee for the fund involved, and against the directors as trustees, and against V. B. Jenkins, liquidating agent, as trustee, charging these three separate defendants as alleged trustees, and charging each separately. (5) No cause of action is set forth in the declaration against the defendants or any of them. (6) The State of Georgia, suing to recover an alleged tax claim, has no right to maintain the suit. (7) The County of Chatham, suing to recover an alleged tax claim, has no right to maintain the suit. The other grounds of the demurrer state in different ways a general demurrer. The court overruled the demurrer, and the defendants excepted.

*Adams & Adams,* for plaintiffs in error.

*George W. Owens,* contra.

HILL, J. (After stating the foregoing facts.)

1. The first three grounds of the demurrer raise the contention that the petition is demurrable because of misjoinder of parties, in

that the declaration attempts to join separate demands and to enforce by one proceeding distinct and separate claims. It is argued that the State of Georgia and the County of Chatham are distinct plaintiffs, that a suit for a demand due to the county can not be maintained by the State of Georgia and vice versa, and that different tax amounts are due and the claims are separate and distinct. We think that this contention is without merit. The petition shows that but one execution was issued for the tax, in a stated amount, and this included taxes due both to the State and to the county. Executions for non-payment of taxes against persons who are not required to pay to the treasurer are issuable by the tax-collectors of their respective counties, as soon as the last day for payment has passed. Civil Code (1910), § 1151. The Code also provides that the several tax-collectors of this State shall keep a stub-book of tax receipts, and enter on the receipt and the stub attached thereto the name of each taxpayer in their respective counties, the amount of taxes assessed against him, and itemize the same, stating the amount due the State, county, poll tax, or any other professional or special tax. Civil Code (1910), § 1228. It will thus be seen that the tax-collector is the collector for both the State and county, only one tax fi. fa. is issued for both, and the defendants are the same, and their liability to the State is the same as their liability to the county, except as to the amount owing to each, which depends on the difference in rates of taxation. The county is a part of the political subdivision of the State. It would be useless, therefore, to issue two fi. fas. against the same defendants and levy them upon the same property, and the law will not require a useless thing to be done.

2. The petition is also demurred to on the ground that it is duplicitous and contradictory. We think that this ground of the demurrer is also without merit. The suit is brought against the directors of the Merchants National Bank and its agent who delivered the property, and the Citizens & Southern Bank which received it. All of the defendants were parties to the transaction of purchase and sale, and to the liquidation of the Merchants National Bank. They all had a common purpose, and it can not be held that an action brought against all three is inconsistent. *First National Bank of Sparta* v. *Wiley,* 150 *Ga.* 759 (105 S. E. 308). And see *Morrison* v. *Fidelity & Deposit Co.,* 150 *Ga.* 54 (102 S. E. 354).

3. The other grounds of the demurrer are merely general de-murrers stated in different ways. It is insisted by the plaintiffs in error that the State of Georgia and the County of Chatham sued to recover an alleged tax claim, and have no right to maintain the suit. It is argued that the petition means that the two plaintiffs are *creditors* of the Merchants National Bank; that their claims are " debts," and that they have no right to a judgment as creditors asserting " debts." Properly construed, we do not think that the petition is open to this criticism. The petition has not for its pur-pose the collection of taxes as such, but it seeks to hold the de-fendants, who have acted, not technically as trustees, but in a trust relation with reference to certain funds, liable for the diversion of such funds, which should have been applied by them in good con-science to the payment of taxes due the State and county on prop-erty which had been sold and the funds misapplied by them. It is unquestionably true that according to the weight of authority taxes are not a " debt " within the usual meaning of that word; but there is authority holding that a tax is a debt. State of N. C. *v.* Georgia Co., 112 N. C. 34 (17 S. E. 10, 19 L. R. A. 485, 7 Ann. Cas. 22) ; Albany County *v.* Durant, 9 Paige (N. Y.), 182; People *v.* Weber, 164 Ill. 412 (45 N. E. 723); McInerny *v.* Reed, 23 Iowa, 410; United States *v.* Pacific R. Co., 4 Dillon, 66, Fed. Cas. No 15,983; State *v.* Duncan, 3 Lea (Tenn.), 679. The petition in the present case, properly construed, can not be regarded as a suit at law to collect taxes as a debt of an individual taxpayer. The plaintiffs here are not creditors in the ordinary sense, and their claims are not debts. *State* v. *S. W. R.,* 70 *Ga.* 1 (8), 13, 33; *Georgia R. Co.* v. *Wright,* 124 *Ga.* 596, 621 (53 S. E. 251). Taxes in this State can not be collected by a suit at law, in the absence of express stat-utory provision. Id. See *DuBignon* v. *Brunswick,* 106 *Ga.* 317, 325 (32 S. E. 102); *State* v. *W. & A. R. Co.,* 136 *Ga.* 619 (2), 626, 627 (71 S. E. 1055). The present is not a suit at law to col-lect taxes as such, but is a proceeding alleging that the directors of two corporations and the cashier of one of them agreed to the liquidation of one of the corporations, and the agent of one, under agreement, did bring about the liquidation, received and paid out all of the proceeds from the sale, and failed and refused to pay the taxes upon property which had been returned, which taxes were due by the bank which went into liquidation; and the present pro-

ceeding was instituted to recover of these defendants the amount which is due by the selling corporation for taxes on account of the misappropriation of the funds arising from the sale of the assets of the bank which went into liquidation under the agreement as stated in the petition. There is nothing in the petition to show that any real estate was sold by the selling corporation. In *Atlanta Real Estate Co.* v. *Atlanta National Bank, 75 Ga. 40,* it was held that " The directors and managers of a corporation who control and have charge of its effects are trustees for the stockholders, and both they and others who, with knowledge of their misappropriation, aid them in diverting its property, would be liable to the injured parties." In the opinion in that case it was said: " That such of the defendants as control the corporation or had charge of its effects are trustees for the stockholders, is a proposition too well established to be denied, and that both they and others who, with a knowledge of their misappropriation, aided them in diverting its property, would be liable to the injured parties, is an equally well settled principle." In the instant case it appears that the Merchants National Bank, on April 16, 1919, returned its property for State and county taxes for that year to the amount of $434,000; the taxes amounted to $8,193.92, and this amount was not paid, but, in the language of the learned trial judge, it "ought in law and good conscience to have been paid." The consideration of the selling bank, $700,000, having passed into the hands of the Citizens & Southern Bank, can not be levied on by the sheriff. This is a case where funds in the nature of trust funds were misapplied, and which calls for the aid of a court of equity. Without it the plaintiffs are remediless. The Civil Code (1910), § 3784, declares: " All persons aiding and assisting *trustees of any character* [italics ours], with a knowledge of their misconduct, in misapplying assets, are directly accountable to the persons injured." The property of the liquidating bank having been disposed of by the two banks and their agent, no property of the Merchants National Bank could be found upon which to levy the fi. fa., the assets turned over to the plaintiff in error being in money. Nor could a writ of garnishment avail; for the answer would necessarily be, under the allegations of the petition, that there is no property, it having been paid out to the stockholders of the Merchants National Bank; and it is manifest that mandamus would not lie. For every right there is a

remedy; and while, as already stated, the suit can not be maintained as one at law to collect taxes, yet, under the facts alleged in the petition, a court of equity will require the defendants, who are essentially trustees of the property misapplied, and who have misappropriated the funds of the selling bank, a part of which should have gone to the payment of these taxes, to respond to the injured party in a sum equal to the amount misappropriated. See, in this connection, *Anderson* v. *Adams,* 117 *Ga.* 919 (43 S. E. 982); *Morrison* v. *Fidelity &c. Co.,* supra. There is no question of the fact that the amount of taxes claimed by the State and county is due and unpaid. But learned counsel for plaintiffs in error argues that the remedy by execution is *exclusive,* and that this necessarily inhibits every other form of procedure by the State and county. A number of cases are cited in support of this contention, viz.: Marye v. Diggs, 98 Va. 749 (37 S. E. 515, 51 L. R. A. 902); Gatling v. Commissioners, 92 N. C. 536 (53 Am. R. 434); Johnson v. Howard, 41 Vt. 122 (98 Am. D. 568); Bradford v. Storey, 189 Mass. 104 (75 N. E. 256, 257); City of Rochester v. Bloss, 185 N. Y. 42 (77 N. E. 794, 6 L. R. A. (N. S.) 694, 7 Ann. Cas. 15); Marion County v. Woodburn Mercantile Co., 60 Or. 367 (119 Pac. 487, 41 L. R. A. (N. S.) 730); Louisville Water Co. v. Com., 89 Ky. 244 (12 S. W. 300, 6 L. R. A. 69); Baldwin v. Hewitt, 88 Ky. 673 (11 S. W. 803, 805); First National Bank v. Fancher, 48 N. Y. 524.

There are two lines of decision on this question, some of them holding in accordance with the above view. But on the other hand there are decisions holding that a remedy created by statute for the collection of taxes, unless the statute expressly makes it so, is *not exclusive* of all others. See note to case of Greil Bros. Co. v. Montgomery, Ann. Cas. 1915D, 738, 741, citing U. S. v. Chamberlin, 219 U. S. 250 (31 Sup. Ct. 155, 55 L. ed. 204), reversing 156 Fed. 881 (84 C. C. A. 461, 13 Ann. Cas. 721). See also State v. New York Life Ins. Co., 119 Ark. 314 (171 S. W. 871, 173 S. W. 1099). Compare Preston v. Sturgis Mill Co., 183 Fed. 1 (105 C. C. A. 293, 32 L. R. A. (N. S.) 1026; Succession of Mercier, 42 La. Ann. 1135 (8 So. 732, 11 L. R. A. 817); Post v. Taylor Co., 2 Flip. 518, Fed. Cas. No. 11,302; Garrett v. Memphis, 5 Fed. 870. Our own statute does not expressly make the remedy by execution exclusive. In the Chamberlin case, supra, Mr. Justice Hughes, de-

livering the opinion of the court, said that an action would lie on behalf of the United States under a statute which "creates an obligation to pay the tax, and does not provide an exclusive remedy." And see Darnell v. State, 174 Ind. 143 (90 N. E. 769). Cooley on Tax. (3 ed.) 17, states both rules as follows: "It sometimes becomes a question whether a tax can be regarded as a debt in the ordinary sense of that term, so that the ordinary remedies for the collection of debts can be applied to it. In general it will be found that statutes imposing taxes make special provision for their collection, and do not apparently contemplate that any others will be necessary; but these may, nevertheless, fail; and the question then arises whether the tax must fail also, or whether resort may be had by the State to such remedies as would be available to individuals to enforce demands owing to themselves. But instances have occurred of tax laws which provided for laying the tax, but made no provision whatever for collection. In such case it may well be held that the legislature contemplated the enforcement of the tax by the ordinary remedies; and therefore, if the tax was assessed against an individual, that assumpsit or debt would lie for the recovery thereof. The same reasoning would support a proceeding in equity to enforce a lien for the tax when assessed, not against an individual, but against property; and some courts have gone so far as to hold that the imposition and assessment of a tax create a legal obligation to pay, upon which the law will raise an assumpsit, although the statute has given a special remedy. But in general, the conclusion has been reached that when the statute undertakes to provide remedies, and those given do not embrace an action at law, a common-law action for the recovery of the tax as a debt will not lie." The remedy by execution is obviously not an adequate one in a case like the present; nor is garnishment or mandamus an adequate remedy. Section 1151 of the Civil Code of 1910 is as follows: "Executions for non-payment of taxes, against persons who are not required to pay to the treasurer, are issued by the tax-collectors of their respective counties as soon as the last day for payment has arrived, and must be directed to all and singular the sheriffs and constables of this State." The legislature surely did not intend, by the passage of the act authorizing the collection of taxes by execution, to foreclose the State and county, in a case like the present, from collecting trust funds misapplied,

where State and county taxes are admitted to be due and are with-
held. Equity is the correction of that wherein the law by reason
of its universality is deficient. The remedy by execution in the
instant case is obviously deficient. There is no property of the Mer-
chants National Bank which can be reached by execution or gar-
nishment, but there was trust property in the hands of the de-
fendants which has been misapplied and which *can* and *ought* in
good conscience to be recovered of them by a court of equity for
the party injured. In 26 R. C. L. § 339, it is said: " In States
in which an action at law may be maintained for the collection of
a tax, whether by virtue of statutory authority or otherwise, it is
generally held that a court of equity will aid in the collection of a
tax when the remedy at law proves inadequate;" citing State *v.*
Georgia Co., supra, which was a civil action in the nature of a
creditors' bill, brought by the State of North Carolina and County
of Guilford for the appointment of a receiver for the defendant
corporation, to collect its assets and pay its debts. " It stands on
complaint and demurrer." In delivering the opinion of the court
Clark, J., said, in part: " The imposition of a tax clearly implies
the intention to collect. If the plaintiffs can not bring a creditors'
suit, they can not prove their claims in a suit brought by another,
and would thus be compelled to stand idle and see a private creditor,
or even a stockholder, bring suit and absorb the entire assets of
the delinquent corporation. Thus the sovereign would be placed
beneath the subject, the creator below the corporation of its own
creation. The principle that the absence of an adequate statutory
remedy preserves the right of action is recognized by all the au-
thorities. Gatling *v.* Commissioners, [supra] ; Cooley, Tax. p. 13,
note, and cases therein cited. Moreover, throughout all the au-
thorities a clear distinction seems to run between the cases where
a private plaintiff brings an action to compel the levy and collection
of taxes to pay a debt due him, and where the sovereign seeks to
collect its own taxes for the general purposes of government. The
citizen has only such remedies as are given to him; the State has
inherently all remedies not voluntarily and unequivocally relin-
quished. . . If this was a creditor's bill by private individuals
seeking to collect a debt of $60,000 against a debtor who had
fraudulently removed his assets out of the State, they would be
entitled to the present remedy for the appointment of a receiver.

. . If private individuals, under these circumstances, can have a receiver appointed, the State and county have a remedy at least as broad. The day has gone by in North Carolina when men by uniting themselves in a corporation can obtain exemption from taxation which they could not claim as individuals. Const. art. 5, sec. 3. Neither can corporations now claim to be exempt, in the enforcement of the collection of taxes, from any process which would lie in favor of or against individuals for the collection of taxes or other debts. Indeed the debt due the State for taxes is a preferred debt. It is expressly recognized as a debt, and preferred by the statute for the settlement of estates of deceased persons (Code § 1416), and in bankruptcy proceedings. It also has the distinction that neither the homestead nor offsets can be claimed against it. In all this there is evidence that public policy provides not a lesser, but a broader remedy for the collection of taxes than for other indebtedness. When there is property subject to levy, taxes are collectible usually in that mode. But when the property has been spirited away, the State does not necessarily lose its debt, but has at least the same remedies for its collection as are given to its humblest citizens. It is hardly necessary to note that this is not a proceeding to assess the defendant for taxation. That has been done in the appropriate forum, the amount due has been adjudged, and the defendant has acquiesced by abandoning any appeal therefrom. The present proceeding is to enforce collection of the taxes so adjudged due, by proceedings which would be open to any one else against a debtor who had removed all his property from the jurisdiction of the court." In view of our own statutes and laws on this and kindred subjects, the reasoning of Judge Clark is peculiarly appropriate to the present case. Our Code declares that " In the payment of the debts of a decedent, they shall rank in priority in the following order: . . Unpaid taxes or other debts due the State or United States." And while it is true that under our decisions taxes may not be a " debt " within the strict meaning of that word, yet, so far as we are aware, this court has not gone further than to hold that an *action at law* will not lie in this State to collect taxes *as a debt;* and it has not held, where an adequate remedy is not provided by statute, that equity will not assume jurisdiction in aid of the statute to collect trust funds which have been misappropriated and which should be collected and applied to taxes due the State and county.

In the view we take of this case the petition sets out an equitable cause of action, and the court below did not err in overruling the demurrer.　　　*Judgment affirmed.　All the Justices concur.*